UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
JUN RUAN : 19-cv-4063 (ARR) (RER)
:
Plaintiff, : <u>NOT FOR ELECTRONIC</u>
: <u>OR PRINT PUBLICATION</u>
-against- :
: <u>OPINION & ORDER</u>
:
CHAD WOLF and KEVIN CUCCINELLI[1] :
:
Defendant. :
------------------------------------------------------------------- :
X

ROSS, United States District Judge:

Plaintiff, Jun Ruan, alleges that the United States Citizenship and Immigration Service ("USCIS") has unreasonably delayed adjudication of his asylum application, in violation of the Administrative Procedure Act ("APA"). Mr. Ruan filed his application with USCIS over three years ago, and has received no response from the agency. He seeks an order compelling the agency to adjudicate his application. The defendants brought a motion to dismiss, both for lack of subject jurisdiction and for failure to state a claim, or in the alternative, for summary judgment. I find that this court does have subject matter jurisdiction, but I grant defendants' motion to dismiss for failure to state a claim. The plaintiff has not pled enough facts in his sparse complaint to state a claim that the delay has been unreasonable under the APA. Thus, I dismiss the claim without prejudice to re-filing if there is a continued delay and the plaintiff is able to state additional facts or causes of action. Because I am granting the motion to dismiss, I do not reach the motion for summary judgment.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the caption has been updated to reflect the current public officers in the respective positions. The Clerk of Court is directed to update the docket accordingly.

## BACKGROUND

A. <u>**Asylum Procedures**</u>

The Immigration and Nationality Act ("INA") states that noncitizens present in the United States are permitted to apply for asylum. 8 U.S.C. § 1158(a)(1). To be granted asylum, the applicant must demonstrate past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i). A grant of asylum provides a noncitizen with ongoing legal status in the United States, a pathway to applying for legal permanent residence and eventually citizenship, and the ability to petition for derivative asylum status for immediate family members. *See* §§ 1158(b)(3)(A), 1159(b).

Section 1158(d) instructs the Attorney General to establish a procedure for the consideration of asylum applications. § 1158(d)(1). This procedure "shall provide that…in the absence of exceptional circumstances," an initial interview will be held within 45 days of application, and a decision will be made within 180 days of the application. §§ 1158(d)(5)(A)(ii)–(iii). This subsection of the statute further states, "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." § 1158(d)(7).

The Asylum Division of USCIS adjudicates asylum applications pursuant to § 1158. Davidson Decl. ¶ 2(a), ECF No. 15-1. The agency institutes various policies, including scheduling systems, to manage the large volume of applications it receives. On January 31, 2018 the agency switched from a scheduling system of "first-in-first-out" ("FIFO"), to a system of "[l]ast-[i]n-[f]irst-[o]ut" ("LIFO").[2] *Id.* ¶¶ 19, 23, 25–26. Under FIFO, applications are considered

---

[2] The agency previously adhered to a LIFO scheduling system from 1995–2014. Davidson Decl. ¶¶ 19–23. In 2014, the system changed to FIFO. *Id.* ¶ 23.

in the order they are received. *Id.* ¶ 23. Under LIFO, the most recently filed asylum cases are considered before older applications. *Id.* ¶ 19. Specifically, USCIS's current priorities for scheduling asylum interviews are as follows:

> (a) Applications that were scheduled for an interview, but the interview had to be rescheduled at the applicant's request or the needs of USCIS;
> (b) Applications pending 21 days or less since filing; and
> (c) All other pending applications, starting with newer filings and working back toward older filings.

*Id.* ¶ 26.

The LIFO system is intended, in part, to reduce the enormous backlog of asylum applications awaiting adjudication by USCIS. *See id.* ¶ 25. In January 2018, there was a backlog of 311,000 asylum applications waiting to be adjudicated by the agency. *Id.* ¶ 26. As of September 2019, there was a backlog of 340,810 applications. *Id.* ¶ 11.

The other purpose of LIFO, according to Andrew Davidson, Chief of the USCIS Asylum Division, is to "eliminat[e] the incentive to file frivolous, fraudulent or otherwise non-meritorious asylum applications solely to obtain employment authorization." *Id.* ¶ 27. While a noncitizen is waiting for his asylum application to be adjudicated, he may apply for authorization to be able to work legally in the United States. 8 C.F.R. § 208.7(a)(1). A work authorization application can be filed 150 days after a noncitizen applies for asylum, and the government is required to grant or deny work authorization within 30 days. *Id.* Thus, if new applications are adjudicated with 180 days, those applicants will not have an opportunity to receive work authorization under 8 C.F.R. § 208.7(a)(1).

There is no clear timeline for asylum applicants to know when their case will be adjudicated, but according to Mr. Davidson, USCIS "is aiming to virtually eliminate the backlog of cases pending more than six months by 2024." Davidson Decl. ¶ 40. Applicants are permitted

3

to request expedited adjudication in a case of (1) "[s]evere financial loss"; (2) "[u]rgent humanitarian reasons"; and/or (3) "[c]ompelling U.S. government interests[.]" USCIS, *How to Make an Expedite Request*, , https://www.uscis.gov/forms/forms-information/how-make-expedite-request (last updated Jan. 31, 2020). The website appears to indicate that there is no opportunity to appeal or receive judicial review of denials of expedite requests. *See id.* ("USCIS . . . [h]as the sole discretion to decide whether to grant or deny a request.").

### B. Jun Ruan

Jun Ruan is a native and citizen of the People's Republic of China. Compl. ¶ 5, ECF No. 1. He filed an I-589 Application for Asylum with USCIS on June 28, 2016. I-589 Receipt, Compl. Ex. 1, ECF No. 1-3. He has completed the biometrics required for the application. Compl. ¶ 9. He has not been scheduled for an asylum interview, or received any other communication from USCIS regarding his application. *Id.* ¶¶ 11–12. While Mr. Ruan was waiting for his application to be adjudicated, USCIS changed from the FIFO to LIFO scheduling system. Mr. Ruan has not filed a request for USCIS to expedite his application. Davidson Decl. ¶ 36.

On July 14, 2019, Mr. Ruan brought this action to compel adjudication of his asylum application. At that time, a little over three years had passed since his application was filed. As of this order, his application has been pending, without interview or any communication from USCIS, for approximately 3 years and 8 months. On January 6, 2020, the defendants filed this motion to dismiss.[3]

## LEGAL STANDARD

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) permits a party to move to dismiss a complaint for "lack of subject-matter

---

[3] Defendants moved for summary judgment in the alternative, but I do not address that part of their motion as I am granting the motion to dismiss.

jurisdiction." Fed. R. Civ. P. 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In making this determination, I must "accept as true all material factual allegations in the complaint." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). Plaintiff must establish the existence of subject matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113.

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" On a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Mr. Ruan's brief complaint alleges one cause of action, to compel "agency action withheld or unreasonably delayed" under the APA. *See* Compl. ¶ 13 (quoting 5 U.S.C. § 706(1)). The Mandamus Act, 28 U.S.C. § 1361, is referenced in the jurisdictional section, *see* Compl. ¶ 1, but

a claim under that statute is not articulated elsewhere in the complaint. Even if a mandamus claim was clearly stated, in the context of a suit to compel agency action, "[t]he avenues of relief that the Mandamus Act and the APA provide are 'essentially the same.'" *Rajput v. Mukasey*, No. C07-1029RAJ, 2008 WL 2519919, at *2 (W.D. Wash. June 20, 2008) (citing *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)); *see also* 14 Charles Alan Wright et al., *Federal Practice and Procedure* § 3655 (4th ed.) ("[I]n suits seeking to compel agency action, the relief [available under the APA and mandamus] functionally may overlap."). Thus, I analyze the viability of Mr. Ruan's complaint under the APA, and do not address mandamus relief distinctly. *See, e.g.*, *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 WL 902382, at *3 (N.D. Cal. Mar. 22, 2007).[4]

A. **Subject Matter Jurisdiction**

Defendants argue that jurisdiction over the pace of adjudication of asylum applications is explicitly barred by 8 U.S.C. § 1158(d). That subsection of the INA provides timeframes for scheduling interviews and adjudicating asylum applications, and also states "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."§ 1158(d)(7). I agree with the government that § 1158(d)(7) precludes a private right of action to enforce the deadlines in § 1158(d). However, I disagree that the renunciation of a private right of action is identical to a jurisdictional bar. Moreover, Mr. Ruan is not, in fact, bringing a claim to enforce § 1158(d), so the government's jurisdictional argument is largely irrelevant.

---

[4] I also do not address any potential claim under Constitutional due process, which is argued in plaintiff's briefing on this motion, *see* Pl.'s Opp. to Defs.' Mot. to Dismiss ("Pl.'s Br.") 5, 12, ECF No. 17, but is not included in the complaint *see* Compl. The plaintiff may not use briefing on a motion to dismiss to raise new claims. *See, e.g.*, *Kiryas Joel All. v. Vill. of Kiryas Joel*, No. 11 Civ. 3982(JSR), 2011 WL 5995075, at *5 (S.D.N.Y. Nov. 29, 2011), *aff'd*, 495 F. App'x 183 (2d Cir. 2012) (summary order).

Section 1158(d)(7) is not a jurisdiction-stripping provision. Certainly, the drafters of the INA knew how to write jurisdiction-stripping provisions, as the statute is replete with such provisions. *See, e.g.*, 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)."). The language of § 1158(d)(7) is different. *See L.M. v. Johnson*, 150 F. Supp. 3d 202, 210 (E.D.N.Y. 2015) (Section 1158(d)(7) is "unlike other sections of the INA, which specifically preclude judicial review of a determination made by the Attorney General"). While I am precluded from granting relief directly under § 1158(d), this restriction is not jurisdictional in nature.

Even if § 1158(d)(7) did bar jurisdiction over any cause of action to enforce the timetables in § 1158(d), that is simply not the claim that Mr. Ruan is bringing in this case. The government interprets § 1158(d)(7) to mean that "it does not have a duty to adjudicate [Mr. Ruan's asylum application] within any particular timeframe." Defs.' Reply 2, ECF No. 18. This logical leap is unsupported by law. "Plaintiff's right to adjudication within a reasonable time exists independently of § 1158(d), and . . . § 1158(d)(7) is not so broad as to strip Plaintiff of h[is] right to challenge all delays in the adjudication of h[is] asylum application, no matter how egregious." *Fangfang Xu v. Cissna*, No. 19 Civ. 2584 (KPF), 2020 WL 240839, at *5 (S.D.N.Y. Jan. 16, 2020). Mr. Ruan is not challenging the delay in adjudication under § 1158(d), but instead, under the APA. *See id.* ("Significantly, however, Plaintiff's APA claim does not concern Defendants' obligation to abide by § 1158(d). Instead, Plaintiff alleges that Defendants have failed to comply with the much more general requirements set forth in the APA itself[.]")

Section 555 of the APA provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed[.]" *Id.* § 706(1). There is a

carve out to judicial review under the APA where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." *Id.* § 701(a)(1), (2).

Jurisdiction under the APA, in combination with federal question jurisdiction under 28 U.S.C. § 1331, is appropriate in this case. *See, e.g.*, *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 388 (S.D.N.Y. 2004) ("[W]here a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331.") The APA carve outs do not apply to this suit. Section 701(a)(1) does not apply because 8 U.S.C. § 1158(d) is not a statute that precludes judicial review. As for 5 U.S.C. § 701(a)(2), despite the government's protestations to the contrary, *see* Defs.' Mem. of Law in Supp. of Mot. to Dismiss or for Summ. J. ("Defs.' Br.") 12, ECF No. 16, adjudicating asylum applications is not an action committed to agency discretion by law.

While there is some division among district courts on this point, I adopt the view of the "the overwhelming majority of district courts" in holding that even where the decision to grant relief is within USCIS discretion, the timing of that adjudication may be subject to judicial review under the APA. *See Boussana v. Johnson*, No. 14 Civ. 3757(LGS), 2015 WL 3651329, at *5 (S.D.N.Y. June 11, 2015) (citing *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993 at *3 (W.D.Wash. June 11, 2010). Certainly, granting or denying asylum applications is committed to agency discretion, but that does not mean USCIS has discretion to decline to adjudicate applications at all. *See*, *e.g.*, *Hoo Loo v. Ridge*, No. 04 CV 5553(DLI)(RML), 2007 WL 813000, at *3 (E.D.N.Y. Mar. 14, 2007) ("Adjudicating [an adjustment of status] claim is not at the discretion of defendants-defendants are required to do so."); *Kim*, 340 F. Supp 2d at 389 ("Whether to *adjudicate* an adjustment application is not discretionary[.]"). Even without a binding statutory or regulatory deadline, USCIS's obligation to adjudicate asylum applications means that "at some

point, defendants' failure to take any action runs afoul of section 555(b)." *See Kim*, 340 F. Supp. 2d at 393. USCIS does not have the discretion to ignore pending immigration applications indefinitely.

Thus, I have jurisdiction to consider Mr. Ruan's claim. Defendants' Rule 12(b)(1) motion to dismiss is denied, and I must consider the next issue: whether plaintiff has stated a claim upon which relief can be granted.

B. **Failure to State a Claim**

Plaintiff's single cause of action is that the approximately three-year delay in adjudication of his asylum application constitutes agency action "unlawfully withheld or unreasonably delayed" in violation of the APA. Compl. ¶ 13 (citing 5 U.S.C. § 706(1)). To survive defendants' Rule 12(b)(6) motion, plaintiff must state "a plausible claim for relief[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The determine whether a delay is reasonable, courts apply the "TRAC" factors, drawn from *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984). The six factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable, it may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*L.M.*, 150 F. Supp. 3d at 207 (citing *TRAC*, 750 F. 2d at 80 and *Families for Freedom v. Napolitano*, 628 F. Supp. 2d 535, 540 (S.D.N.Y. 2009)); *see Pesantez v. Johnson*, No. 15 Civ. 1155(BMC), 2015 WL 5475655, at *3 (E.D.N.Y. Sept. 17, 2015) (same).

"Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task

9

requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003). Mr. Ruan's sparse complaint does not state enough facts to allow for such an in-depth analysis. All Mr. Ruan tells me is that he filed an application for asylum[5], completed biometrics, filed a request for status[6], and, three years later, had not been scheduled for an asylum interview or received any other update from USCIS. *See* Compl. ¶¶ 8–12. These are not sufficient facts to plausibly state a claim for delayed agency action.

Mr. Ruan ignores these TRAC factors and relies solely on the length of his delay. *See* Pl.'s Br. 10–11. Looking at the length of delay in isolation is not the correct test for delayed agency action. *See Hoo Loo*, 2007 WL 813000, at *4 ("[T]he Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim of unreasonable delay.") (citing *I.N.S. v. Miranda*, 459 U.S. 14, 19 (1982)). But the length of the delay can certainly be influential in the analysis, particularly of the first TRAC factor, which asks whether the delay is governed by a rule of reason.

The government is mistaken in its assertion that "[d]istrict courts within the Second Circuit consistently have found delays greater than three years and one month to not be unreasonable under the law." Defs.' Br. at 17. The government does cite several district court decisions holding that a delay of three years or longer was reasonable. *See id.* (citing *Xiaobin Xu v. Nielsen*, 18-cv-2048, 2018 WL 2451202, at *2 (E.D.N.Y. May 31, 2018); *Gong v. Duke*, 282 F. Supp. 3d 566, 568 (E.D.N.Y. 2017); *Hoo Loo*, 2007 WL 813000, at *4; *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005)). But this cherry-picked selection ignores other cases where district court judges

---

[5] Plaintiff incorrectly states the date of application as July 5, 2016. Compl. ¶ 8. The actual application attached to the complaint says the date of application was June 28, 2016. I-589 Receipt.
[6] There is another erroneous date in this paragraph of the complaint. Plaintiff says he filed a request for status on "August 13, 2019," but the complaint was filed before that, on July 15, 2019. *See* Compl. ¶ 10.

in the Second Circuit held that delays of approximately three or four years were unreasonable, or might be unreasonable so as to survive a motion to dismiss. *See Rodriguez v. Nielsen*, No. 16-CV-7092 (MKB), 2018 WL 4783977, at *2, *21 (E.D.N.Y. Sept. 30, 2018) (denying cross-motions for summary judgment because there was insufficient evidence provided by either side to determine whether a three-year delay in adjudication of a U Visa was reasonable); *Eid v. Chertoff*, No. 07–CV–201(JBA), 2008 WL 905927, at *5 (D. Conn. Mar. 31, 2008) (denying motion to dismiss because "[w]hether the plaintiffs' wait of more than four years is unreasonable . . . is a fact-based determination . . . ."); *Alkeylani v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) ("[I]t is clear that the three years during which Plaintiffs' applications have been pending qualifies as an unreasonable delay[.]"); *Kim*, 340 F. Supp. 2d at 386, 394 (denying motion to dismiss where plaintiff had waited four years for adjudication of his application).

Moreover, the government appears to imply that Mr. Ruan's application may be adjudicated in approximately four more years—eight years from the date he applied. *See* Davidson Decl. ¶ 40 (USCIS "is aiming to virtually eliminate the backlog of cases pending more than six months by 2024."). If a large volume of new applications continue to come in, I am unsure how, under a LIFO system, Mr. Ruan's application would actually be adjudicated by 2024—or at all, for that matter. But even assuming the accuracy of Mr. Davidson's prediction, I have serious doubts that a rule that leaves asylum seekers waiting eight years to have their applications adjudicated can be said to be governed by a rule of reason. *See Boussana*, 2015 WL 3651329, at *1, *8–9 (compelling USCIS to adjudicate an adjustment of status application because "after eight years 'the seemingly indefinite delay of an I–485 petition becomes untethered from any discernable "rule of reason."'") (quoting *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1072 (N.D. Cal. 2014)). Mr. Davidson's affidavit provides extensive explanations of the many factors contributing

to the long delay, *see* Davidson Decl. ¶¶ 14–27, and I acknowledge that "this may be a legitimate policy crisis[,]" *Alkeylani*, 514 F. Supp. 2d at 266. That does not mean the courts necessarily must "excuse Defendants from their statutory duty and let the cost fall on immigrant plaintiffs." *Id.* However, I need not decide one way or the other on the "rule of reason" factor at this time because I find that Mr. Ruan has made no allegations as to other crucial TRAC factors.

Specifically, Mr. Ruan's complaint is completely devoid of facts that would allow me to make a determination as to the third TRAC factor, whether human health and welfare are at stake, or the fifth factor, the nature and extent of interests prejudiced by the delay. The government argues that there is no prejudice to Mr. Ruan because he "has been provided with a safe haven and an opportunity to work in the United States during the pendency of the processing of his asylum application." Defs.' Br. at 19. I do not agree that this is necessarily the case. The ability to live and work in the United States does not eliminate the possibility that an inordinate delay could cause undue prejudice or detriments to an asylum seeker's health and welfare. However, because such facts are not alleged here, I do not have sufficient information to evaluate these two factors.

The fourth TRAC factor, the effect of expediting delayed action on other agency activities, is a weighty consideration in the context of compelling an overburdened agency to act on an individual application. I share the concerns expressed by other courts that "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *L.M.*, 150 F. Supp. 3d at 213 (quoting *Mashpee*, 336 F.3d at 1100). However, there may be circumstances under which it is appropriate to allow a particular individual to "jump the line" in this way.

I join Judge Cogan in declining to hold that "relief in this Court would never be available to an asylee facing a delayed adjudication[.]" *Pesantz*, 2015 WL 5475655, at *5. Because facts

about the delay and the consequences thereof are not adequately alleged in the complaint, such a claim for relief has not been plausibly stated here.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted without prejudice to refiling if there is a continued delay and the plaintiff is able to state additional facts or causes of action. I note that Mr. Ruan may want to avail himself of a potential administrative remedy, requesting expedited adjudication from USCIS, before petitioning this court again. *See* USCIS, *How to Make an Expedite Request*, https://www.uscis.gov/forms/forms-information/how-make-expedite-request (last updated Jan. 31, 2020). The Clerk of Court is directed to close the case.

SO ORDERED.

                                                                          /s/
                                                      Allyne R. Ross
                                                      United States District Judge

Dated:        February 11, 2020
                Brooklyn, New York